IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Red Notary & Tags Multiservice, Inc.,   :
               Petitioner        :
                                :
               v.               :   No. 460 C.D. 2025
                                :
Department of Transportation,      :   Submitted: June 16, 2026
               Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MATTHEW S. WOLF, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: August 3, 2026

        Red Notary & Tags Multiservice, Inc. (Petitioner) petitions for review of the order entered by the Department of Transportation (Department) Executive Deputy Secretary of Transportation (Secretary) on March 12, 2025, denying its exceptions to a hearing officer's (Hearing Officer) proposed report and order (Report and Order), and making the Report and Order, which revoked Petitioner's certificate of authority (Certificate of Authority) issued pursuant to Agent Services Agreement No. 735293 (Agreement), final.  After careful review, we affirm.

## Background

        The relevant facts and procedural history of this case are as follows.  On August 1, 2016, Petitioner and the Department entered into the Agreement licensing Petitioner to provide vehicle title and registration services at its business located in Willow Grove, Pennsylvania.  (Supplemental Reproduced Record (S.R.R.) at 1b.)  The

Agreement was effective for an initial five-year term and was automatically renewable thereafter for five additional annual periods. Pursuant to the Agreement, the Department issued Petitioner a Certificate of Authority allowing it "to *responsibly* offer agent services to consumers in the Commonwealth, in a customer friendly manner, and in strict compliance with the terms and conditions of this Agreement and the Program Requirements [(Program Requirements)]." (S.R.R. at 3b, ¶ 3) (emphasis original).

The Agreement required Petitioner to obtain proof of identification from customers to complete transactions, stating that it "shall require that each applicant for title or registration provide, at the time of making application, proof of identification that complies with the Department's proof of identification policies, and shall verify the authenticity of each applicant's proof of identification document in the manner prescribed by the Program Requirements[.]" (S.R.R. at 4b, ¶ 9.) The Agreement incorporated a number of Program Requirements into its terms, attached to the Agreement as Exhibit "B," which listed the following documents as acceptable forms of identification: "A valid Pennsylvania Photo Driver's License; A valid Pennsylvania Photo Identification Card; A valid Pennsylvania Photo Exempt Driver's License; A valid Pennsylvania Photo Exempt Identification Card; or A valid U.S. Armed Forces Common Access Card[.]" (S.R.R. at 21b, ¶ 1.7.)

The Agreement also permitted the Department to impose three varying levels of sanctions in the event Petitioner failed to comply with its terms. Specifically, the Agreement authorized the Department to suspend or revoke Petitioner's Certificate of Authority, or to terminate the Agreement. (S.R.R. at 5b, ¶¶ 12-13.) Although the Agreement expressly defined the terms "Revocation" and "Suspension," it did not define the word "Termination."[1]

---

[1] The definitional provision states in pertinent part:

**(Footnote continued on next page…)**

The Agreement authorized suspension or revocation of Petitioner's Certificate of Authority under certain circumstances listed in Paragraph 12, including "for the acts and omissions listed in Paragraph 19" (listing 48 violations warranting revocation). (S.R.R. at 5b, ¶ 12a-c.) The penalty of termination is addressed in Paragraph 13 of the Agreement, which reads in pertinent part: "The Department may also terminate this Agreement for good cause shown, including, but not be limited to a Revocation of [Petitioner's] [C]ertificate of [A]uthority[.]" (S.R.R. at 5b, ¶ 13a.)

On July 21, 2022, the Department conducted an administrative audit of Petitioner's business and, based on the auditor's findings, hand delivered a "Notice of Intent to Suspend Immediately" to Petitioner that same day (Suspension Notice). (S.R.R. at 24b.) The Suspension Notice advised Petitioner that the Department was suspending the Agreement, effective immediately, due to Petitioner's acceptance of passports from other countries for vehicle registrations, in violation of Paragraph 19(2) of the Agreement. On September 9, 2022, the Department sent Petitioner a "Notice of Intent to Terminate," advising Petitioner of its intent to terminate the Agreement

---

**Revocation**--A sanction which permanently withdraws [Petitioner's] certificate of authorization.

**Suspension**--A sanction which temporarily withdraws [Petitioner's] certificate of authorization to provide agent services.

(S.R.R. at 3b, ¶ 2.)

3

effective October 22, 2022, based on Petitioner's violations of Paragraphs 19(2) and 19(4)[2] of the Agreement (Termination Notice).[3] (S.R.R. at 25b-27b).

On September 28, 2022, Petitioner filed an appeal requesting a hearing, as well as an unopposed motion for supersedeas. The Hearing Officer granted the motion for supersedeas and held a hearing on the matter on February 8, 2023. At the hearing, Petitioner's owner, Jenny Pena, testified that the company had never been cited for any violations in the past. Ms. Pena averred that it has always been her intention to obtain proper identification and documentation from customers before completing any transaction. (R.R. at 25-26a.) The Hearing Officer took the case under advisement pending the parties' submission of briefs.

In its post-hearing brief, Petitioner contended the Department lacked the authority to **terminate the Agreement**, because the relevant provisions of Paragraph 19 of the Agreement (Paragraph 19) authorized only the less serious sanction of **revocation** of the Petitioner's Certificate of Authority. (R.R. (Reproduced Record) at 61a.) Petitioner maintained that despite the Agreement's clear use of the separate words "revocation" and "termination," along with corresponding circumstances warranting each respective sanction, the Department improperly conflated the terms in issuing the Termination Notice. Petitioner also argued the Department violated its due process rights by failing to hold a hearing before it imposed any sanction because it

---

[2] Paragraph 19(2) of the Agreement authorizes revocation of Petitioner's Certificate of Authority if it "has accepted proof of identification documents which fail to conform to Department guidelines in connection with issuance of the registration cards or plates - *first violation*." (S.R.R. at 13b, ¶ 19(2).) Paragraph 19(4) provides that revocation of the Certificate of Authority is warranted if Petitioner "has processed applications or issued registration cards or plates without proper documentation as required by the Department-*first violation*." (S.R.R. at 14b, ¶ 19(4).)

[3] The Termination Notice also advised that suspension of Petitioner's Certificate of Authority was warranted for one month because of multiple errors found during the audit. (S.R.R. at 26b.)

"could have determined that mitigating circumstances existed such that these first offense charges should not have resulted in what might be considered a lifetime ban." (R.R. at 62a.)

The Department countered:

If revocation is warranted, the Department may also, in its discretion—and **as it did in this case—terminate an agent's Certificate and [Agreement]**. "Revocation" is defined in the [Agreement] as "[a] sanction which permanently withdraws Provider's certificate of authorization." Termination does not appear to be defined anywhere in the [Agreement]. This begs the question: what is the difference between revocation and termination? **Because termination is explicitly carved out in the [Agreement] by Paragraph 13 and is a discretionary next step after revocation as stated in Paragraph 13(a), termination is a more severe sanction than revocation. The Department has interpreted revocation to mean that an agent can eventually reapply for consideration to hold a Certificate and [Agreement] sometime in the future after the same is revoked, but termination intends a lifetime bar to holding a Certificate or [Agreement] ever again.**

**The authority for termination exists in Paragraph 13 of the [Agreement]. In the case *sub judice*, the Department terminated Petitioner's Certificate and [Agreement] pursuant to Paragraph 13(a). Paragraph 13(a) states "[t]he Department may also terminate this Agreement for good cause shown, including, but not limited to. . . . [r]evocation of [Petitioner's] certificate of authority." Because revocation was warranted, termination was also warranted in this case, pursuant to Paragraph 13(a).** As the termination was expressly authorized by the terms of the [Agreement], there was no need for the Department to first send a "Notice of Revocation," followed by a "Notice of Termination." Such an action can be accomplished within the same notice.

5

> Having to send two notices would be duplicative, redundant, and would not be a good use of judicial resources, as multiple appeals would have to be filed and litigated—the cost of which would be borne by Petitioner.

(R.R. at 54a-55a) (record citations omitted; emphasis added). The Department additionally contended that Petitioner had adequate notice of the allegations precipitating the Termination Notice and was given an opportunity to be heard at the evidentiary hearing on those violations. (R.R. at 47a.)

On August 25, 2023, the Hearing Officer issued his proposed Report and Order **revoking Petitioner's Certificate of Authority without prejudice** to apply for a new certificate at any time. In doing so, the Hearing Officer modified the Department's termination decision by expressly allowing Petitioner to reapply for a certificate in the future. (R.R. at 55a.) The Report and Order addressed Petitioner's arguments concerning "intermingling the terms termination and revocation, " and the lack of a pre-termination hearing, as follows:

> [T]he mere inconsistent use of the terms "revocation" and "termination" in the notices here is not, in and of itself, a fatal defect. This is because the notices did advise [Peitioner] that a negative action was being taken against it (whether a revocation or a termination) and any defense would have been the same for either action. In fact, no one even suggests that if the notice had used the term revocation, rather than termination, the defense would have been handled differently. Thus, this defect is harmless error.
> . . . .
>
> . . . [T]here is nothing in the either the [Agreement] or the Vehicle Code that explicitly requires a pre-termination hearing. *See generally*, Chapter 75 of the Vehicle Code, 75 Pa. C.S. §§ 7501-7509. Further, while there is no automatic supersedeas provision envisioned in the [Agreement], . . . a respondent . . . can petition the hearing examiner for a discretionary supersedeas. [Petitioner] took advantage of

6

that option here with real success and the supersedeas was granted on October 11, 2022. The availability of this remedy, which is implemented by a neutral fact finder, is a legally sufficient pre-termination process.

. . . .

[T]he Department's brief explains that the agency has read "termination" as permanent, whereas in a "revocation" the individual can request to have a new [agreement] at some point in the future. Setting aside the title of this Notice, which reads "Intent to Terminate" as well as the closing paragraph, which also uses the word termination, and looking instead at the actual sanctions listed for each violation, which are revocation and suspension **we are left with a one-month suspension and a revocation, which allows for an ability to request a new Certificate**, which by the Department's own admission, is not limited to any specific waiting period.

(Report and Order, 8/25/23, at 11-13, 17) (emphasis added).

Petitioner thereafter filed exceptions requesting that the Secretary reverse the Report and Order, arguing:

There are two significant procedural errors in the Department's case, either of which should result in [P]etitioner's appeal being sustained in its entirety. First**, the Department imposed a sanction, to wit, a termination**, **which is not authorized in the law or the contract**. Moreover, the meaning of a termination is not defined and cannot simply be made up. Second, [P]etitioner is not afforded requisite due process. . . .

(Certified Record (C.R.) at 141) (emphasis added).[4] In response, the Department contended:

The findings of the Proposed Report and Order should be affirmed and adopted; **however, the penalty should be modified to termination, not revocation**. The findings contained in the Proposed Report are thoroughly reasoned

---

[4] The citations to the Certified Record reflect electronic pagination.

7

and supported by the facts of record and applicable law. However, **termination was authorized by the express terms of the [Agreement], specifically Paragraph 13(a), and Petitioner received a Notice of Termination. There is no evidence to suggest that the Department didn't consider all possible sanctions when arriving at termination**[.] . . .

(C.R. at 145) (emphasis added). The Department concluded by requesting that the Secretary deny Petitioner's exceptions, "but modify the penalty to termination instead of revocation." (C.R. at 151).

On March 12, 2025, the Secretary entered an order denying Petitioner's exceptions and making the Report and Order final. In doing so, the Secretary did not address the Department's argument that the sanction should be modified to termination and allowed the final penalty to remain a revocation without prejudice. (C.R. at 206.) On April 10, 2025, Petitioner filed the underlying petition for review.

## Analysis[5]

On appeal, Petitioner contends the Department lacked the authority to **terminate** the Agreement for its purported Paragraph 19 violations. According to Petitioner, the plain terms of the Agreement authorize only **revocation** of the Certificate of Authority as a sanction for Paragraph 19 violations, and not the more severe penalty of termination. (Petitioner's Br., at 9-11.) Petitioner additionally maintains that it was not afforded adequate due process because the Department issued deficient notices and failed to conduct a hearing before imposing sanctions that "resulted in what might be considered a lifetime ban." *Id.* at 12. Petitioner's arguments miss the mark in several respects.

---

[5] Our review of the Department's decision "is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence." *Kasha v. Department of Transportation*, 782 A.2d 15, 17 n.2 (Pa. Cmwlth. 2001).

First, as we have noted, the Secretary did not uphold the Department's termination of the Agreement. By affirming the decision of the Hearing Officer, the final penalty imposed was **revocation** of Petitioner's Certificate of Authority **without prejudice**. Petitioner acknowledges this in its brief, indicating "the hearing officer must have agreed [that termination was not warranted] since he imposed a revocation in addition to a 1-month suspension[.]" (Petitioner's Br., at 11.) Therefore, Petitioner's argument challenging the sanction of termination, which was not ultimately imposed, lacks a proper factual foundation, and merits no relief.

With respect to Petitioner's due process argument, "agent and messenger service agreements [are] truly licenses and any adverse action by the Department [i]s appealable." *Heller v. Department of Transportation, Bureau of Motor Vehicles*, 26 A.3d 538, 541 (Pa. Cmwlth. 2011). "[A] license is a valuable privilege and may not be suspended or revoked without due process." *Moore v. Department of Transportation*, 989 A.2d 49, 52 (Pa. Cmwlth. 2009). "[D]ue process notice requirements are fulfilled when the licensee is informed of the type and the date of the alleged violation." *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Big D Restaurants, LLC*, 149 A.3d 890, 897 (Pa. Cmwlth. 2016). Additionally, "[d]ue process is a flexible concept and imposes only such safeguards warranted by the situation." *Id.* "The meaningful opportunity to be heard requirement of procedural due process entails an appropriate hearing." *Id.* "In assessing an alleged denial of procedural due process, **demonstrable prejudice is a key factor**." *Id.* (emphasis in original).

Here, Petitioner has not identified how it was prejudiced by the lack of a predetermination hearing, as it ultimately participated in a hearing conducted by the Hearing Officer before any sanction was imposed. Petitioner had a full and fair

opportunity to present its case, and it did so through the testimony of its owner, who testified that any errors Petitioner made in providing title and registration services were not intentional. The Hearing Officer then, after considering the evidence presented at the hearing and the parties' briefs, issued an order modifying the Department's sanction of termination to the less severe penalty of revocation, without prejudice to Petitioner to apply for a new certificate in the future.

To the extent Petitioner challenges the adequacy of the Suspension and Termination Notices, the notices were not deficient, as they "informed [Petitioner] of the type and the date of the alleged violation." *Big D Restaurants, LLC*, 149 A.3d at 897; (S.R.R. at 24b-27b) (listing Petitioner's numerous violations and attendant dates). Further, even if the notices were somehow lacking, it is well settled that "a party's full participation in a . . . hearing, as was the case here, will cure a prior notice deficiency." *Paey Associates, Inc. v. Pennsylvania Liquor Control Board*, 78 A.3d 1187, 1192 (Pa. Cmwlth. 2013).

Based on the foregoing and bearing in mind that "due process of a flexible concept," *see Big D Restaurants, LLC*, 149 A.3d at 897, we conclude that the Department complied with the necessary due process requirements. Petitioner's argument to the contrary merits no relief. Accordingly, we affirm the Secretary's order.

_____
PATRICIA A. McCULLOUGH, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Red Notary & Tags Multiservice, Inc.,   :
                   Petitioner   :
                                      :
             v.                 :   No. 460 C.D. 2025
                                        :
Department of Transportation,       :
                   Respondent   :

## _ORDER_

AND NOW, this 3rd day of August, 2026, the order issued by the Department of Transportation Executive Deputy Secretary of Transportation on March 12, 2025, in the above-captioned matter is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge